NORMAN BRIMEYER, Appellee, v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Appellant.

No. 41183.

MARCH 8, 1932.

Brown, Lacy & Clewell and Hughes, O'Brien & Faville, for appellant.

Frantzen, Gilloon & Glenn and Hugh Stuart, for appellee.

EVANS, J.—The accidental injury under consideration herein occurred shortly after one o'clock A. M. on March 27, 1930, upon a certain bridge or trestle of the defendant's. For the purpose of the discussion, the plaintiff's ward, the injured boy, will be referred to as the plaintiff. His evidence was to the effect that he had been drawn to the place of the accident by a call for help; that upon answering the call he found a companion, Herbert Klass, whose foot had been caught between the ties of the bridge, and who was unable to extricate himself. It was in connection with the plaintiff's efforts at extricating his companion from his dangerous position that he became himself subjected to the perils of an approaching train, and became unable to escape therefrom without injury.

The defendant-Company operates a line of railway between the city of Dubuque, Iowa, and LaCrosse, Wisconsin. The general course of the line is northerly-southerly. One of the stations along the line is North Buena Vista, a village of 190 people, and located in Clayton County. The area traversed by the railway is upon the west bank of the Mississippi River. Its topography is exceedingly rough and the railway winds, like a serpent, about the bases of the hills, and is carried over the low places by grades and trestles. Four hundred feet south of the depot in this town is located the trestle where plaintiff's injury occurred. This trestle is 137 feet long and is from 25 to 30 feet in height. It spans a creek and an area of low ground adjacent thereto. It is 10 feet wide and affords no facilities whatever

for the use of pedestrians. Indeed it is a most forbidding rather than an inviting place for a traveler.

On the night in question, and while the plaintiff was engaged in an effort to release his companion from a perilous position, one of defendant's freight trains approached from the south. It was a regular train running on its own proper schedule. It comprised nearly 100 cars and carried a tonnage of 3000 tons and was moving at the rate of 25 or 30 miles an hour. It was properly equipped with safety appliances and could be brought to a stop at a distance not less than 900 to 1000 feet. The track south of the depot does not lie in a straight line, but in a succession of curves. The presence of these curves rendered it impossible to keep the headlight of the train focused between its rails except for limited distances. While the plaintiff was engaged in his effort of assistance to Klass, and when he became aware of the approach of the train, he brandished a flash light as an attempted warning of his presence upon the bridge. The engineer and fireman saw the flash light and observed its approximate location, but were unable to bring their own headlight to a focus upon the locality until they were within a few hundred feet of the location. When the plaintiff had finished his service to Klass, his place upon the bridge was at a point about 25 feet south of the north end of the bridge. The train was too close upon him to enable him to cover that distance in his attempted escape. He therefore lay face-down upon a tie-cap at the extreme edge of the bridge and attempted to maintain this position while the train passed over it. He was thrown to the ground and was severely injured.

The plaintiff pleaded that the defendant had negligently failed to reduce the speed of its train after it discovered the plaintiff's peril and predicated recovery on the doctrine of ''last clear chance.'' He also pleaded that he was a licensee and not a trespasser and that the defendant-Company had failed to exercise the degree of care due to a licensee under the circumstances pleaded. Evidence was introduced intended to support these theories of recovery. The cause is submitted here by the appellant upon three assignments of error, which elaborate the single proposition that a verdict should have been directed for the defendant and that there was no basis in the evidence for the application of the doctrine of ''last clear chance,'' and no

basis in the evidence for the contention that the plaintiff was a licensee and not a trespasser.

■ I. Was the evidence sufficient to go to the jury on the contention that the plaintiff was a licensee and not a trespasser? It is made to appear that there was some pedestrian travel over the defendant's right of way in the vicinity of this trestle. Four hundred feet southerly and westerly from this trestle were three residence properties, located close to the railroad right of way. These three properties were respectively occupied by residents. The substance of the evidence is that the pedestrian travel to and from these homes occasionally resorted to the railroad right of way; and that some of this travel passed over the railroad trestle. It further appears that a highway extended northerly from these homes toward, and past, the depot of the defendant and intersected one of the town's streets at the north side of such depot. This highway was located on the west side of the railroad right of way abutting thereon and running parallel therewith. Its improvement included a wagon bridge standing parallel with the railroad trestle and covering the same creek. This highway was available to all pedestrian travel on the west side of the railroad. It is claimed, however, that in times of flood the creek overflowed the wagon bridge and that in such event the travel sought the higher grade on the right of way.

This is the general character of the evidence offered as proof that the railway company had acquiesced and consented to the public use of its right of way for pedestrian travel. There is no evidence of notice to the railway company other than such as may be inferred from the fact of such travel. As already indicated, the construction of this trestle bridge was such as to leave no room for any pedestrian thereon while a train was passing thereover. The bridge was long enough to require a substantial period of time for a pedestrian to pass over it. It was so narrow as to expose the pedestrian to imminent and certain peril, if he should be overtaken thereon by a train. The curves of the railroad and the obstruction to vision caused by the high bluffs in the area are such that an approaching train is not visible at this bridge from either direction until such train comes into such close proximity as to put a pedestrian on the bridge in imminent peril. It is not to be lightly inferred that

the railway company knowingly consented to such a use of its property by the public. Such use was not only perilous, but literally foolhardy. The burden upon the plaintiff was to show the public use by pedestrians, not simply of portions of the right of way, but such use of this trestle bridge. The evidence on this feature of the record is very indefinite and meager. The most that can be said is that it shows previous occasional trespass by the occasional pedestrian. It wholly fails to show such a general use or practice as would charge the railroad company with notice. When it is further considered that the wagon bridge lay parallel to the railroad bridge; that it furnished a safe and convenient passage for pedestrians, that it was more readily accessible to pedestrian travel than was the railroad bridge; and that it was always passable except in times of flood, it raises a strong barrier to any inference that the pedestrian-public had been driven by necessity to abandon the safe and convenient way and to resort to the inconvenient and the perilous.

We hold the evidence to be clearly insufficient to warrant any inference of license.

II. Was the defendant entitled to go to the jury on the doctrine of last clear chance? The train came from the south. The bridge came within range of vision of the engineer when he rounded the base of a certain hill. At that point the engineer's attention was directed to the plaintiff's flash light. The engineer interpreted the movement of the flash light as a "come-on" signal. Nevertheless he shut off the steam. He could not see the man behind the flash light nor could he fix the location of the flash light as to whether it was on the bridge or not. Because of the curve in the railway line, his own headlight focused in another direction. He came forward some hundreds of feet before he discovered that the flash light was upon the bridge. At that time he put on his brakes. He was then within 500 feet of the bridge. According to the evidence the train could not have been stopped within a distance of less than 900 or 1000 feet from the point where the flash light was first seen. The distance from the train to the bridge when the engineer first saw the flash light was less than 900 feet. The actual location of the plaintiff on the bridge at the time the engineer saw the flash light was at a point 25 feet south of the north end of the bridge. If, therefore, the engineer had been able to

determine his exact location, he had a right to believe that the plaintiff was near enough to the end of the bridge to enable him to come to a place of safety before the train could reach him. True the plaintiff was detained and prevented from thus saving himself by his service of rescue to his companion. But the engineer knew nothing about that and had no means of knowledge. The plaintiff acted most heroically in his desperate attempt to save his companion at the risk of his own life. For that he is to be highly commended, and should be deemed fairly entitled to great reward. But the court has no power of reward; nor may the moral desert of the plaintiff be imposed upon the defendant as a legal obligation. It can not be held that an engineer is bound to stop his train whenever he sees a person at, or near, the railroad track ahead of him. Ordinarily a pedestrian may remove himself from the dangers of an approaching train in a mere moment by stepping to one side. No such opportunity is afforded the engineer of a train. If the pedestrian fails to avail himself of his opportunity, then the only opportunity offered to an engineer is to bring his train of a hundred cars to a full stop. Under the evidence in this record it does not appear that the engineer had it in his power to save the plaintiff after he discovered his peril.

It must be held therefore that the evidence was insufficient to justify submission to the jury of the doctrine of last clear chance.

The judgment below is accordingly reversed.

WAGNER, C. J., and KINDIG, DE GRAFF, GRIMM, and ALBERT, JJ., concur.